[No. 3215.]

## Jake Sutton *v.* The State.

1. Theft—Possession in this State of Property Stolen on Foreign Territory—Charge of the Court.—The doctrine that, in order to justify a conviction for theft committed out of the State, it must be shown, with other requisites, that the party who committed the theft brought the property into this State, or, at least, that he had possession or control over it after it came into this State, is unquestionably supported by the letter of the law. But, if the proof shows that the accused aided in taking the stolen property in another State, furnished the means for its transportation into this State, came to this State himself in pursuance of an agreement to do so, and in this State received his portion of the fruits of the crime, he, in contemplation of law, brought the property into this State, exercised possession and control over it in this State, and was, from its inception, a principal in the crime. See the opinion *in extenso* for a charge announcing the principle, *held* correct.

2. Same.—After their retirement, the jury returned into court and requested further instructions as to whether or not they were authorized to consider facts proved to have transpired in Texas, in determining whether or not the accused was present when the property was stolen in the Chickasaw Nation. The court charged as follows: "In order to determine whether or not the defendant was present at the commission of the alleged offense, the jury are authorized to take into consideration all the facts and circumstances proven in the case in so far as the same have any bearing on the question, without reference to which side of the river (State line) they may have occurred." *Held,* correct.

3. Practice—Evidence.—Bill of Exceptions reserved to the action of the court in sustaining objections to proposed testimony, which fails to disclose the evidence sought to be elicited, and the grounds urged to it and sustained, is not sufficient to enable this court to determine the relevancy and materiality of the rejected evidence, and hence its exclusion cannot be held error.

4. Same—Privileged Communications.—It is a well settled general rule that an attorney cannot be permitted to disclose communications made to him by his client in the course of their professional relations. It is no exception to this rule that the client turned State's evidence against his

co-defendant and testified for the prosecution; wherefore the trial court properly refused to permit the defendant's counsel to state in evidence communications made to him by the defendant while the relation of attorney and client existed.  See the opinion *in extenso* for an elaboration of the principle.

5. SAME—PRIVILEGE OF ARGUMENT.—The prosecuting attorney in this case transcended the limit of legitimate argument in closing for the State, but was promptly reprimanded by the court, and the jury fully instructed to disregard his utterances so far as they were unauthorized.  In the light of all the circumstances surrounding the case, the defendant's rights do not appear to have been prejudiced by the abuse of privilege.  *Held*, that, under such circumstances, the conviction will not be disturbed.

6. THEFT—FACT CASE.—See the opinion for a state of proof *held* sufficient to corroborate an accomplice witness, and to support a conviction for theft of a mule.

APPEAL from the District Court of Grayson.  Tried below before the Hon. R. Maltbie.

The conviction was for the theft of a mule, the property of Isaac Cole, and the penalty imposed was a term of five years in the penitentiary.

The opinion summarises the inculpatory evidence sufficiently to convey a clear understanding of the rulings.

The motion for new trial raised the questions involved in the opinion.

*Hare & Head,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE.  The State's witness Mann testified, in substance, that he and the defendant agreed together to steal Isaac Cole's mule, and that, in pursuance of this agreement, they stole the mule in the Chickasaw Nation; that it was agreed between them that he should bring the mule into this State and sell it, and meet the defendant at Pottsboro, in Grayson county, and there divide with him the proceeds of the theft; that the defendant furnished him with a bridle and saddle to put on the mule, and fifty cents in money to pay ferriage at the river; that he, the witness, brought the mule to Grayson county, swapped it for a horse, then sold the horse, and met the defendant at Pottsboro according to appointment, and divided proceeds with him according to their previous agreement.  The defendant was not with the witness when he, the witness, brought the mule

into this State, nor did the defendant ever have possession of or control over the said mule after it was brought into this State.

Upon this state of facts, the court charged the jury as follows: "In order to convict the defendant you must believe that he was personally present at the time and place when and where the mule was taken from the possession of said Cole, and you must believe that he aided and abetted in the same, and you must further believe that the said Sutton brought said mule into Grayson county, Texas. But, if you believe that the said Sutton and Mann stole the said mule under the circumstances enumerated above, and that it was agreed at or before the time that the said Sutton would furnish the said Mann the means to bring the said mule into Grayson county, Texas, and that he did so, and that it was further agreed between them that said Mann should bring said mule into Grayson county, Texas, and sell it, and you believe from the evidence it was then agreed that the said Sutton would meet the said Mann in the said Grayson county, Texas, and that they would divide the proceeds of the sale of the said mule; and further, that in pursuance of the said agreement the said Mann brought the mule into Grayson county and sold it, or first swapped it, and sold the animal he received in exchange, and that the said Sutton met the said Mann in Grayson county, Texas, in pursuance of said agreement, and that they divided the proceeds arising from the said sale between them, this would constitute a sufficient bringing of said mule into Grayson county, on the part of the said Sutton."

It is insisted by the defendant's counsel that the foregoing charge is erroneous. Their position is that "to justify a conviction for theft committed out of this State, it must be shown (with other requisites) that the party who committed the theft brought the property into this State, or, at least, that he had possession or control over it after it came into this State." This position is unquestionably supported by the letter of the law. (Penal Code, Arts. 798 and 799; *Carter* v. *The State*, 37 Texas, 362.) But does not the spirit and purpose of the law reach further? If the defendant not only aided in taking the mule, but furnished the means of bringing him into this State, and then came here himself in pursuance of an agreement to do so, and here received his portion of the fruits of the crime, did he not, within the meaning of the law, bring the property into this State? Was he not, in the eyes of the law, a principal in the theft, from its inception to its final consummation? Was not the possession and

control over the property in this State by Mann the possession and control also of the defendant, that possession and control being in pursuance and in furtherance of the common design of both? We are of the opinion that the learned judge expressed the correct view of the law applicable to the evidence in this case, in the charge we have quoted. We think this view is supported by both reason and authority. (*Welsh* v. *The State*, 3 Texas Ct. App., 413; *Heard* v. *The State*, 9 Texas Ct. App., 1; *Wells* v. *The State*, 4 Texas Ct. App., 20; *Berry* v. *The State*, 4 Texas Ct. App., 492; *Scales* v. *The State*, 7 Texas Ct. App., 361; *O'Neal* v. *The State*, 14 Texas Ct. App., 582; *Cox* v. *The State*, Id., 96.)

During the time the jury were deliberating upon the case, they came into court and requested of the court further instructions as to whether they had the right to consider the facts which were proven to have transpired in Texas in determining whether the defendant was present when the mule was stolen in the Chickasaw Nation. In response to this inquiry the court instructed them as follows: " In order to determine whether or not Jake Sutton was present at the time of the commission of the alleged offense, the jury are authorized to take into consideration all the facts and circumstances proven in the case, in so far as the same have any bearing on the question, without reference to which side of the river they may have occurred."

We see no valid objection to this instruction. It merely directed the jury to look to and consider all the evidence in the case bearing upon the point inquired about. If facts were in evidence which transpired on the Texas side of the river, and which tended to prove that the defendant took part in the theft of the mule on the other side of the river, certainly such facts are proper to be considered in determining the defendant's participation in the theft. We fail to perceive any force in the objections made to this charge. Of course this charge was intended by the court to be considered by the jury in connection with the main charge previously delivered to them, and we must presume that it was so considered by the jury. The special instruction requested by the defendant's counsel, and refused by the court, was not in response to the question propounded by the jury, and, furthermore, was not, in our opinion, correct in principle.

The defendant's bills of exception numbers one, two and four, were taken to evidence admitted over his objections, which evi-

dence related to occurrences which transpired in Texas, and af-
ter the theft of the mule in the Chickasaw Nation, upon the
ground that it was not shown that the defendant had possession
of or control over the mule after it was brought into this State.
We think the evidence was admissible. As before stated, we
think the defendant could be guilty of the theft in this State,
although he may not have had the actual possession or control
over the mule in this State.

On cross-examination of the witness Mann, the defendant
asked him if he, the witness, had not been a witness at Fort
Smith, in a case on a charge of theft, against a party, and what
kind of property it was, and if it was not his mother's property,
and if he did not assist in stealing it, and if he did not turn
State's evidence, and have them to convict the man. Upon ob-
jection made by the State the witness was not permitted to
answer these questions. We are not informed by the bill of ex-
ceptions what were the facts intended to be elicited by these
questions, nor the particular objections made by the State. We
cannot determine from this bill of exceptions the relevancy and
materiality of the testimony sought to be elicited, and therefore
we cannot hold that the court erred in its ruling. (*Davis* v. *The
State*, 14 Texas Ct. App., 645.)

The defendant's sixth and eleventh bills of exception are like-
wise too imperfect to enable us to determine the relevancy and
the materiality of the evidence that was rejected. It is not
shown in the bills what the testimony was which the questions
sought to develop.

The defendant's eighth bill of exceptions is to the rejection of
testimony by him to prove that the witness Mann, while confined
in jail on the charge of this same theft, had stated to his coun-
sel repeatedly that the defendant Sutton had nothing to do with
the theft of the mule, but that he, the witness. was alone guilty
of the theft. This testimony was objected to by the State, and
was rejected by the court upon the ground that said statements
having been made by the witness to his attorneys, the same
were privileged communications, and were therefore not admis-
sible in evidence. It is a well settled general rule that a lawyer
is not permitted to disclose communications made to him by his
client in the course of their professional relations. (Whart.
Crim. Ev., sec. 496; Roscoe's Crim. Ev., sec. 150; 1 Whart. Ev.,
sec. 576; 1 Greenl. Ev., sec. 237 *et seq.*) But it is contended by the
counsel for the defendant that the case before us does not come

within the general rule; that the witness Mann being an accomplice in the crime, and having turned State's evidence, is not entitled to the benefit of this rule.    In support of this position, we are cited to the case of *Alderman* v. *The People*, 4 Michigan, 414. In that case an accomplice testifying in behalf of the State was held to be compelled to disclose certain communications which he had made to his attorney, and which communications under the general rule were privileged.    The court in that case said: "We think an accomplice who makes himself a witness for the people should be required to give a full and complete statement of all that he and his associates may have done or said, relative to the crime charged, no matter when or where done, or to whom said.    He should be allowed no privileged communications. These he has voluntarily surrendered.    The enforcement of such a rule may be the only protection the party on trial has left; the only means remaining to him to meet, it may be, the perjury of the criminal upon the witness stand."    We are not prepared to follow the doctrine of this case.    While its reasoning is quite plausible, still it has been the long settled rule of the law, founded upon the ground of public policy, that communications made by a client to his attorney, in the course of their relations as such, and with respect to the business about which the attorney had been employed by the client, should not be disclosed. This rule has been most rigidly, and with great unanimity, adhered to by the courts, and the tendency has been to contract rather than relax it.    We hold that the objection to the proposed testimony was properly sustained.

The remarks of counsel for the State in the concluding argument of the case, and set forth in the defendant's ninth bill of exceptions, were improper, and not within the rules governing argument.    The court very promptly checked the counsel, and reprimanded him for this violation of the rule, and instructed the jury to disregard the objectionable remarks.    If, upon a consideration of the whole case, it appeared to us that this conduct of counsel had influenced the minds of the jury to the defendant's prejudice, we would not hesitate, upon this ground alone, to reverse the judgment.    But, considering the prompt and commendable action of the learned judge on the occasion, in connection with the facts of the case, we do not believe that the remarks objected to could reasonably or probably have had any effect upon the jury prejudicial to the defendant.

It is insisted by the counsel for the defendant that this convic-

tion is not supported by the evidence; that it is based upon the testimony of an accomplice alone, and that this testimony is uncorroborated in the manner and to the extent required by law. Is the testimony of the accomplice Mann corroborated by other evidence tending to connect the defendant with the offense committed? Mann testified that on the night of July 11 he left the defendant's house with the mule, and with the defendant's bridle and saddle, which the defendant had given him to use in riding the mule, and that he brought the mule into Grayson county, exchanged it for a pony, sold the pony at Whitesboro, and from there went to Pottsboro on the train, where he met the defendant, and they went from there to Denison together on the train. He further stated that the defendant was to leave home on the next day after the theft, and was to meet witness in Pottsboro, Grayson county, and that the defendant did meet him there on the day agreed upon, and had with him a horse without a saddle. It was proved by other evidence than that of the accomplice that, on the day Mann said he and the defendant met at Pottsboro, they were seen there together; that Mann brought with him on the train and delivered to the defendant a saddle and bridle, and that defendant had rode to Pottsboro on that day on a horse without a saddle; that they went from Pottsboro to Denison and returned together. On the day after the theft the defendant was seen to leave his home in the Chickasaw Nation, riding bare back, saying he was going to Pottsboro.

Does this corroborating evidence tend to connect the defendant with the theft of the mule? We think it does. Unquestionably his saddle and bridle were used by Mann in conveying the mule into Grayson county. The defendant parted with his saddle and bridle on the very day the mule was stolen, and on the next day thereafter he rode his horse bare back to Pottsboro, where he received from the witness Mann the saddle and bridle. Mann had no animal of his own to ride, and this fact was known to defendant. All the circumstances in evidence, omitting the testimony of the accomplice, tend to prove that the defendant knew where Mann had gone to, and the purpose of his going, and that he, the defendant, went to Pottsboro to meet Mann, expecting Mann to be there with the saddle and bridle. Whilst this corroborative evidence is not as full and cogent as is desirable in such cases, still, in our opinion, it fills the measure of the law, and must be held sufficient to uphold the verdict of the jury.

We have found no error for which this judgment should be set aside, and it is therefore affirmed.

*Affirmed.*

Opinion delivered June 21, 1884.